IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| ALVIN SEAGROVES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | CASE NO. 1:11-CV-00035 |
| vs. ) | JUDGE TRAUGER/KNOWLES |
| ) | |
| ) | |
| CORRECTIONS CORPORATION OF ) | |
| AMERICA; UNKNOWN MEDICAL DOCTOR ) | |
| FOR CCA, ) | |
| ) | |
| Defendants. ) | |

# REPORT AND RECOMMENDATION

## I. Introduction and Background

This matter is before the Court upon Defendant Corrections Corporation of America's ("CCA") Motion for Summary Judgment. Docket No. 87. Defendant has contemporaneously filed a supporting Memorandum of Law (Docket No. 87-4), a Statement of Undisputed Facts (Docket No. 87-5), Plaintiff's written responses to Interrogatories (Docket No. 87-3), and the Declarations with Exhibits of Wendy Ashe and Mandy Hinson (Docket Nos. 87-1, 87-2).

Plaintiff has not responded to the instant Motion or to Defendant's Statement of Undisputed Facts.

Plaintiff filed this pro se action alleging that Defendant CCA violated his Eighth Amendment rights pursuant to 42. U.S.C. § 1983. Docket No. 1. Plaintiff sues CCA for denial

1

of adequate medical treatment.[1]  *Id.*  Specifically, Plaintiff avers that he did not receive appropriate diabetic medical treatment between April 15, 2010 and May 23, 2010, resulting in the amputation of his right heel.  *Id.*  Plaintiff further avers essentially that his treatment was curtailed and medical services withheld from him pursuant to CCA's policy of limiting care to inmates for financial gain.  *Id.*  Plaintiff seeks compensatory and punitive damages, as well as injunctive and other equitable relief.  *Id.*

Defendant argues that Plaintiff's claim fails because the undisputed facts demonstrate that Defendant provided him with reasonable and adequate medical evaluation and care, and because Plaintiff cannot establish that an official policy of Defendant was the cause of the constitutional violation he alleges.  Docket No. 87-4.  Accordingly, Defendant contends that it is entitled to a judgment as a matter of law.  *Id.*  Defendant also argues that Plaintiff is not entitled to injunctive or equitable relief.  *Id.*

For the reasons discussed below, the undersigned concludes that there are no genuine issues as to any material fact, and that Defendant is entitled to a judgment as a matter of law. The undersigned, therefore, recommends that Defendant's Motion for Summary Judgment be GRANTED, and that this action be DISMISSED.

## II.  Undisputed Facts[2]

At all times relevant to the case at bar, Plaintiff was an inmate housed at South Central

---

[1] CCA is the only remaining Defendant in this action.  While Plaintiff initially filed suit against CCA and an unnamed, unknown staff doctor, the unknown staff doctor was terminated as a party via an Order entered by Judge Trauger on July 3, 2012.  Docket No. 64.  Accordingly, no individuals remain as Defendants in this action.

[2] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

Correctional Facility ("SCCC"), which is owned and operated by Defendant CCA. Docket No. 1, Complaint. Plaintiff was transferred to SCCC in February 2010. Docket No. 87-1, Declaration of SCCC Health Services Administrator Wendy Ashe ("Ashe Dec."), ¶ 7. At all times relevant to the case at bar, Plaintiff was an inmate housed at the SCCC, which is owned and operated by Defendant CCA. Docket No. 1, Complaint.

Defendant maintains a medical department at SCCC with licensed medical providers, for the purpose of providing adequate, timely, and appropriate medical care to inmates. Ashe Dec., ¶ 3. Defendant also contracts with licensed physicians to provide medical care and treatment to inmates at SCCC. *Id.*

Upon his arrival at SCCC in February 2010, Plaintiff was examined and evaluated by medical personnel, who noted his chronic history of diabetes mellitus as well as his other health problems, and who ordered that his medications be "keep on person" ("KOP"). *Id.*, ¶ 8. Plaintiff was also ordered to undergo fasting blood sugar tests twice weekly to monitor his blood sugar level. *Id.* Despite being required to come to medical to have his blood sugar checked, Plaintiff only presented once to have the test performed. *Id.*, ¶ 9.

In March 2010, Plaintiff's medications were renewed KOP. *Id.*, ¶ 10. On April 28, 2010, Plaintiff was seen in medical department, and he was again ordered to undergo fasting blood sugar tests twice per week. *Id.*, ¶ 11. On May 7, 2010, Plaintiff presented to the SCCC medical department with a sore on his right heel. *Id*., ¶ 12. The wound was evaluated and treated with antibiotics and Silvadene creme. *Id.* Plaintiff was admitted to the medical ward for further treatment and observation, where he remained until May 23, 2010. *Id.*

On May 11, 2010, Plaintiff's evaluation in the medical ward reflected that the necrotic

3

wound on his right heel covered approximately 70% of the surface at that time. *Id.*, ¶ 13. Plaintiff was diagnosed with a diabetic pressure ulcer, but denied experiencing symptoms of hypoglycemia. *Id.* Plaintiff was placed on a low sugar, low salt diet. *Id.* Plaintiff's medication was changed from glyburide to metformin and amaryl, and wound care was ordered. *Id.*

On May 15 and 16, 2010, Plaintiff refused to allow the medical personnel to perform his normal dressing change. *Id.*, ¶ 15. On May 18, 2010, Plaintiff was evaluated by nursing staff, who noted that his entire right heel was now infected, draining, and producing a foul odor. *Id.* Plaintiff was prescribed an antibiotic, which was renewed for another 10 days. *Id.* Plaintiff complained of nausea and vomiting, and medical personnel instructed him to eat the meals served to him and increase his fluid intake in order to help keep his blood sugar regulated. *Id.*

On May 19, 2010, Plaintiff refused his necessary medication. *Id.*, ¶ 16.

On May 20, 2010, Plaintiff was sent to an outside facility for evaluation of his wound. *Id.*, ¶ 17. On May 21, 2010, Plaintiff was sent for wound care to the Waynesboro Emergency Room. *Id.*

On May 22, 2010, Plaintiff refused all his morning medication and treatment, and refused to eat lunch. *Id.*, ¶18. Plaintiff's wound care on May 22 was performed at the ER, and he was also evaluated by SCCC medical staff. *Id.*

On May 23, 2010, medical staff observed a change in Plaintiff's mental status, and his blood sugar test returned a lower than normal result. *Id.,* ¶ 19. Plaintiff refused all his morning medication. *Id.* Nursing staff noted a dark colored phlegm around his mouth, and his emesis tested positive for occult blood, a sign of possible gastrointestinal bleeding. *Id.* Plaintiff was given Glucagon, which is used to raise very low blood sugar, and immediately transferred to the

ER. *Id.*

While in the infirmary, medical personnel monitored Plaintiff's condition, performed wound care, and ensured medication compliance. *Id.*, ¶ 14.

Commissary records show that, on February 25, 2010, Plaintiff purchased oatmeal cakes, nutty bars, and Dr. Pepper; on March 11, 2010, Plaintiff purchased chocolate chip cookies, oatmeal cakes, nutty bars, Coca Cola, and Dr. Pepper; on March 19, 2010, Plaintiff purchased strawberry pop-tarts and Dr. Pepper; on March 26, 2010, Plaintiff purchased oatmeal cakes, swiss rolls, nutty bars, and Dr. Pepper; on April 1, 2010, Plaintiff purchased a jumbo cinnamon roll, swiss rolls, nutty bars, and Dr. Pepper; on April 8, 2010, Plaintiff purchased swiss rolls, nutty bars, and Dr. Pepper; on April 16, 2010, Plaintiff purchased hot cocoa, oatmeal cakes, nutty bars, and Dr. Pepper; on April 23, 2010, Plaintiff purchased nutty bars; on April 30, 2010, Plaintiff purchased nutty bars; on May 6, 2010, Plaintiff purchased nutty bars; and on May 18, 2010, Plaintiff purchased 10 Snickers bars. Docket No. 87-2, Declaration of SCCC Commisary Manager Many Hinson, ¶¶ 4-14.

One symptom of uncontrolled diabetes can be sores or ulcers, particularly on the feet. Ashe Dec., ¶ 20. An ulcer would result from prolonged high blood sugar. *Id.* A person's blood sugar would be high if that person ate sugar foods like soda, cake, candy, and cookies, even while taking the appropriate prescribed medication. *Id.* Such a wound would take longer to heal in a diabetic person than in a non-diabetic person. *Id.*

At all times relevant to this action, the SCCC medical staff acted in good faith and pursuant to their professional medical opinions in examining, evaluating, and treating Plaintiff's medical condition, in order to provide him with appropriate, adequate, and necessary medical

care. *Id.*, ¶ 6. The SCCC medical personnel examined and rendered, or attempted to render, medical treatment, evaluation, and advice to Plaintiff on at least 20 different occasions between February 2010 and May 2010. *Id.*, ¶ 23. At no time did any employee of SCCC unreasonably deny or otherwise unreasonably delay in providing Plaintiff with the appropriate and necessary medical care. *Id.*, ¶ 21. At no time did any employee of SCCC act or fail to act in such a manner as to cause Plaintiff undue pain or suffering. *Id.*, ¶ 22.

All decisions regarding Plaintiff's medical care were made based on the medical providers' professional medical judgments in light of their evaluations of Plaintiff's condition and medical history. *Id.*, ¶ 24. The provision of medical care and services to inmates at SCCC is in no way related to, or limited by, the costs of such care and services. *Id.*

At all times relevant to this action, CCA and SCCC maintained adequate and appropriate policies and procedures providing inmates with the opportunity to report health complaints and receive diagnosis and treatment for minor ailments, chronic conditions, and emergency situations. *Id.*, ¶ 25. In order to receive medical treatment for minor ailments or chronic conditions, inmates must ask to be placed on the sick call list. *Id.*, ¶ 26. At sick call, the inmate is evaluated by nursing staff, facility nurse practitioners and/or physicians, and any necessary treatment is provided. *Id.* Sick call is the appropriate way for an inmate to bring a medical need to the attention of facility staff. *Id.* The procedures for sick call are contained in the SCCC inmate handbook, which is given to every inmate during inmate orientation upon arrival at the facility. *Id.*, 27. Plaintiff received a copy of this handbook in February 2010. *Id.*, ¶ 28.

All aspects of Plaintiff's evaluation and treatment were performed according to applicable CCA and SCCC policies, and were consistent with a reasonable standard of care. *Id.*,

6

¶ 29.

## III. Analysis

### A. Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendant filed the instant Motion on December 6, 2012. Docket No. 87. Plaintiff has failed to respond to Defendant's Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record. ...
> . . .
> **g. Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has failed to respond to Defendant's Statement of Undisputed Facts (Docket No. 87-5). Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no

7

genuine issues as to any material fact and all that remains to be determined is whether Defendant is entitled to a judgment as a matter of law.

**B. Motion for Summary Judgment**

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendant has met its burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining

8

whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## C.  **42 U.S.C. § 1983**

Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States, and must show that the alleged

9

deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043 (1941).

**D. The Case at Bar**

It is undisputed that, at all times relevant to this action, the SCCC medical staff acted in good faith and pursuant to their professional medical opinions in examining, evaluating, and treating Plaintiff's medical condition, in order to provide him with appropriate, adequate, and necessary medical care. It is further undisputed that SCCC medical personnel examined and rendered, or attempted to render, medical treatment, evaluation, and advice to Plaintiff on at least 20 different occasions between February 2010 and May 2010. Moreover, at no time did any employee of SCCC unreasonably deny or otherwise unreasonably delay in providing Plaintiff with the appropriate and necessary medical care, and at no time did any employee of SCCC act or fail to act in such a manner as to cause Plaintiff undue pain or suffering. Furthermore, it is undisputed that all aspects of Plaintiff's evaluation and treatment were performed according to applicable CCA and SCCC policies, and were consistent with a reasonable standard of care.

Additionally, it is undisputed that all decisions regarding Plaintiff's medical care were made based on the medical providers' professional medical judgments in light of their

10

evaluations of Plaintiff's condition and medical history, and that the provision of medical care and services to inmates at SCCC is in no way related to, or limited by, the costs of such care and services.

## IV. Conclusion

In light of the foregoing, the undersigned concludes that there are no genuine issues as to any material fact, and that Defendant is entitled to a judgment as a matter of law. Accordingly, the undersigned recommends that Defendant's Motion for Summary Judgment be GRANTED, and that this action be DISMISSED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge

11

Case 1:11-cv-00035   Document 89   Filed 01/30/13   Page 11 of 11 PageID #: 344